UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIE J. HARRIS,

                    Plaintiff,                    Case No. 1:23-cv-235

v.                                                Honorable Phillip J. Green

MICHAEL BURGESS, et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner.  Plaintiff was previously granted leave to proceed *in forma pauperis*.  (ECF No. 11.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under PLRA, The Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint[2] for failure to state a claim

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] After Plaintiff filed his original complaint (ECF No. 1), he filed a document titled, "Amended Complaints Federal Rules of Civil Procedure Rule (15a)." (ECF No. 7.)

against Defendants Burgess, Clouse, Mackay, Johnson, and Baker.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Erway, Montague, Majerczyk, and Turner: First Amendment retaliation claims; Fourth Amendment claims; Eighth Amendment failure to protect claims based on unspecified threats in August of 2022; Eighth Amendment medical care claims; Eighth Amendment conditions of confinement claims; Fourteenth Amendment due process and equal protection claims; and ADA claims. Plaintiff's Eighth Amendment failure to protect claim against Defendants Erway, Montague, Majerczyk, and Turner regarding Plaintiff's placement in the Start program in close proximity to the prisoner who previously attacked Plaintiff remains in the case. Plaintiff's motion for preliminary injunction (ECF No. 2) will be denied without prejudice.

---

Although Plaintiff styled this filing an amended complaint, it appears to be an amendment to the original complaint, rather than a standalone amended complaint. The distinction is significant because "[g]enerally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (citation omitted). It does not appear that Plaintiff intended to adopt the new pleading in place of the original complaint. "[W]here a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading," the Court may address the new pleading as an addition to, rather than a substitute for, the original pleading. *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (citation omitted). That appears to be the appropriate course here. Accordingly, the Clerk will be directed to update the docket to reflect that this filing is an amendment, rather than an amended complaint. Plaintiff's complaint will consist of Plaintiff's original complaint (ECF No. 1) and the amendment (ECF No. 7).

**Discussion**

I.   **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues the following ECF officials: Warden Michael Burgess; Assistant Deputy Wardens (ADWs) J. Erway and J. Clouse; Resident Unit Managers (RUMs) Unknown Montague and Unknown Johnson; Unit Chief Unknown Majerczyk; Inspector T. Mackay; Lieutenant Unknown Baker; and Prison Counselor (PC) Unknown Turner. (ECF No. 1, PageID.2; ECF No. 7, PageID.21–22.)

In Plaintiff's complaint, he alleges that on August 29, 2022, he "reported the threats he faced" to Defendants Johnson, Montague, Turner, and Majerczyk.[3]  (ECF No. 1, PageID.3.)  Plaintiff states that he requested protective custody at that time, "but was denied."  (*Id.*)  Subsequently, in November or December, "Plaintiff was assaulted by Big Owl [(another prisoner)]" while Plaintiff was in his cell.  (*Id.*)  As a result of the assault, Plaintiff had "a knot on the head and injuries to the body."  (*Id.*) Plaintiff "reported it to Unit 2 staff at the time, but his claims w[ere] disregarded." (*Id.*)  Plaintiff then "made a knife to protect himself, but ultimately got caught with the weapon on 12-24-2022 when staff ask[ed] Plaintiff to step out [of] his cell . . . for a shakedown."  (*Id.*)  Plaintiff "received 10 days' detention and [was] reclassified back to general population by [Security Classification Committee (SCC)] members

---

[3] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotation from Plaintiff's filings.

Defendants RUM Montague, ADW J. Erway, Unit Chief Majerczyk, and PC Turner"
on January 4, 2023.  (*Id.*)  Plaintiff was "due to be released" from detention on
January 14, 2023, however, on January 10, 2023, "Plaintiff requested protective
custody." (*Id.*)  Based on Plaintiff's request, he "was called out to see SCC members"
Defendants Erway, Montague, Majerczyk, and Turner.  (*Id.*)  The "SCC members
asked Plaintiff why did he request protection and Plaintiff explained that his criminal
sexual charges ha[ve] always brought unwanted hostile and violent action upon him."
(*Id.*)  The "above SCC members asked Plaintiff how does he normally deal with it,"
and Plaintiff explained that in the past, he had paid and also "defended himself by
fighting," but that now he "has no money to pay nor the rights to defend himself by
law."  (*Id.*)  Defendants Erway, Montague, Majerczyk, and Turner "suggested
Plaintiff resolve it as usual."  (*Id.*)

These Defendants then "force[d] [Plaintiff] to the Start program where Big Owl
is now waiting to go over to the second part of the program just as Plaintiff." (*Id.*)
Plaintiff contends that prisoner Big Owl "will be able to come out [of his cell] with no
handcuffs on and assault Plaintiff as he promise[d]."  (*Id.*)  Plaintiff claims that his
placement in the Start program "was done in retaliation for filing a grievance
requesting protection" on January 10, 2023.  (*Id.*)  Plaintiff alleges that "there is no
legitimate reason to place [him] in a form of segregation," and "it's punishment for
Defendants' failure to protect or investigate Plaintiff's claim."  (*Id.*)

In Plaintiff's amendment to his complaint, he contends that Defendants Erway, Montague, Majerczyk, Clouse, Mackay, Johnson, and Burgess "are well informed that Plaintiff's life is in serious jeopardy, but refuse to do anything about the situation." (ECF No. 7, PageID.21.)  Plaintiff states that he has "filed legitimate grievances to investigate" and "has talked to each Defendant about him being assaulted by prisoner Big Owl and about the demands of known gang members Tay-G, . . . which is a part of GD Nation." (*Id.*)  With respect to Plaintiff's placement in the Start program, in his amendment, he claims that "once [he] filed a grievance and talked to herein Defendants about receiving protection on 1-10-2023, [he] was forced into the Start Now program without due process or any further misconducts." (*Id.*, PageID.22.)  Plaintiff contends that the Start program is an "alternative segregation" and "is a form of punishment." (*Id.*)  Plaintiff states that prisoner Big Owl "is right across the hall from Plaintiff" and will be "on the same yard." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Fourth, and Eighth Amendments.  (ECF No. 1, PageID.2.) Plaintiff also avers that Defendants violated his right to due process and right to equal protection under the Fourteenth Amendment.  (*Id.*)  Additionally, Plaintiff avers that Defendants violated his rights under the Americans with Disabilities Act (ADA).  (*Id.*)  As relief, Plaintiff seeks compensatory and punitive damages, as well as a declaratory judgment.  (*Id.*, PageID.4.)  Further, Plaintiff filed a motion for preliminary injunction.  (ECF No. 2.)

## II.     Motion for Preliminary Injunction

When Plaintiff filed his complaint, he also filed a motion for preliminary injunction.  (ECF No. 2.)  Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted).   The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834.  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met.").

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action.  *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear

from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims.  Accordingly, Plaintiff's motion for preliminary injunction (ECF No. 2) will be denied without prejudice.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims Against Defendant Baker

With respect to Defendant Baker, Plaintiff fails to allege any facts showing how Defendant Baker was personally involved in the violations of his constitutional rights.  (*See generally* ECF No. 1; ECF No. 7.)  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).

Here, Plaintiff's claims against Defendant Baker fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal.  Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  Accordingly, Plaintiff's claims against Defendant Baker will be dismissed.

## 2.       First Amendment Retaliation Claims

Plaintiff alleges that his placement in the Start program "was done in retaliation for filing a grievance requesting protection."  (ECF No. 1, PageID.3; *see* ECF No. 7, PageID.22.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.       Protected Conduct

With respect to the first element of a First Amendment retaliation claim, a prisoner has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment.").  Here, Plaintiff references filing a grievance and talking to some of

11

the named Defendants "about receiving protection."  (ECF No. 7, PageID.22; *see* ECF No. 1, PageID.3.)  Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action.  *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010).  Here, Plaintiff describes the Start program as an "alternative segregation," however, Plaintiff does not allege any other facts about the nature of his confinement.  (ECF No. 7, PageID.22.)  Therefore, based on the facts alleged by Plaintiff, it is not clear that Plaintiff's placement in the Start program constitutes an adverse action.  Nevertheless, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's placement in the Start program was an adverse action.

### c.    Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.  As explained below, Plaintiff's allegations regarding this third element of a First Amendment retaliation claim fall short.

As an initial matter, with respect to Defendants Burgess, Clouse, Mackay, and Johnson, Plaintiff does not allege that these Defendants had any involvement in his placement in the Start program or that these Defendants knew that he had submitted a grievance requesting protection on January 10, 2023.  Under these circumstances, Plaintiff fails to state a First Amendment retaliation claim against these Defendants. *See Iqbal*, 556 U.S. at 676; *see also See Gilmore*, 92 F. App'x at 190.

With respect to Defendants Erway, Montague, Majerczyk, and Turner, Plaintiff contends that these Defendants placed him in the Start program in retaliation for filing a grievance and talking to these Defendants "about receiving protection." (ECF No. 7, PageID.22; *see* ECF No. 1, PageID.3.)  Specifically, Plaintiff contends that on January 4, 2023, he had been classified for placement in general population after he served 10 days in detention for possessing a knife, but that following his request for protection on January 10, 2023, he met with Defendants Erway, Montague, Majerczyk, and Turner, all of whom are members of the SCC, and he was then placed in the Start program.  (ECF No. 1, PageID.3.)

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity

13

between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he had filed a grievance and verbally requested protection before Defendants Erway, Montague, Majerczyk, and Turner took an adverse action against Plaintiff (i.e., placing him in the Start program)—suggesting temporal proximity—Plaintiff fails to allege sufficient facts to suggest that Defendants acted with a retaliatory motive.  Based on the facts alleged by Plaintiff, it appears that after he requested protection, Defendants, as members of the SCC, met with Plaintiff to determine where to house Plaintiff after he served the 10 days' detention that he received for possessing a knife.  The Defendant SCC members asked Plaintiff why he had requested protection, and "Plaintiff explained that his criminal sexual charges ha[ve] always brought unwanted hostile and violation action upon him."  (ECF No. 1, PageID.3.)  Defendants also asked Plaintiff "how does he normally deal with it," and Plaintiff explained that in the past, he had paid money for protection and also "defended himself by fighting," but that now he

"has no money to pay nor the rights to defend himself by law." (*Id.*)  As a result of the meeting with Plaintiff, these Defendants determined that Plaintiff would be placed in the Start program.

Although the meeting with the SCC to determine where to house Plaintiff may have occurred because Plaintiff had filed a grievance requesting protection (i.e., he asked to be housed somewhere other than general population), under the circumstances alleged by Plaintiff, the sole fact that the grievance proceeded the meeting is insufficient to show that Defendants acted with a retaliatory motive. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  Specifically, based on Plaintiff's allegations regarding what was discussed at the meeting, the factual allegations suggest that it was the discussion at the meeting that led to Plaintiff's placement in the Start program, rather than the fact that Plaintiff had filed a grievance requesting protection prior to the meeting.  That is, Plaintiff's factual allegations suggest that it was the grievance that led to the meeting with Defendants, but then Defendants' decision as to where to house Plaintiff was based on the discussion at the meeting, not the fact that Plaintiff had filed the initial grievance.

In this action, Plaintiff merely alleges the ultimate fact of retaliation, and such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise

a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).  Accordingly, for all of the reasons set forth above, Plaintiff fails to state a First Amendment retaliation claim against Defendants.

### 3.   Fourth Amendment Claims

Plaintiff references the Fourth Amendment in his complaint. (ECF No. 1, PageID.2.) To the extent that Plaintiff intended to present a Fourth Amendment claim regarding the shakedown of his cell on December 24, 2022, during which the knife that Plaintiff made was found, as explained below, Plaintiff fails to state a claim.  (*See id.*, PageID.3.)

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process.  *Id.* at 519, 535.  The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment.  *Id.* at 530.  The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security."  *Id.* at 523–24 (internal citation omitted).  The Court then determined that the official's search of the prisoner's cell did not

violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit the search of Plaintiff's cell, and it did not prevent the confiscation of an item (i.e., the knife that Plaintiff made) in Plaintiff's cell that appeared to be contraband. Furthermore, to the extent that Plaintiff intended to raise any other Fourth Amendment claims, Plaintiff alleges no facts to plausibly suggest that Defendants' actions implicated the protections of the Fourth Amendment. *See Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Frazier*, 41 F. App'x at 764 (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, for these reasons, Plaintiff's Fourth Amendment claims will be dismissed.

### 4.     Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Court construes Plaintiff's complaint to raise Eighth Amendment claims based on the failure to protect him from harm, the failure to provide him with medical care after the other prisoner's assault, and his placement in the Start program.  The Court addresses each Eighth Amendment claim in turn.

### a.     Failure to Protect

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff.  *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995).  Deliberate indifference is a higher standard than negligence and requires that "the official knows of and

18

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

### i. Defendants Burgess, Clouse, and Mackay

In Plaintiff's original complaint, he failed to name Defendants Burgess, Clouse, and Mackay in the body of the complaint. (*See generally* ECF No. 1.)  In Plaintiff's amendment to his complaint, he alleges in a conclusory manner that Defendants Erway, Montague, Majerczyk, Clouse, Mackay, Johnson, and Burgess "are well informed that Plaintiff's life is in serious jeopardy, but refuse to do anything about the situation." (ECF No. 7, PageID.21.)  Plaintiff states that he has "filed legitimate grievances to investigate" and "has talked to each Defendant about him being assaulted by prisoner Big Owl and about the demands of known gang members Tay-G, . . . which is a part of GD Nation." (*Id.*)

With respect to Plaintiff's assertion that he "has talked to each Defendant" about the matter, Plaintiff fails to allege facts to support this assertion.  Plaintiff does not indicate when he spoke to each individual Defendant, and besides Plaintiff's conclusory assertion, he does not indicate what he told each Defendant.  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from

19

alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).   Under these circumstances, Plaintiff's conclusory allegations against Defendants Burgess, Clouse, and Mackay are insufficient to state a claim against them.

Moreover, to the extent that Plaintiff intended to hold Defendants Burgess, Clouse, and Mackay liable for the actions of their subordinates, government officials, such Defendants Burgess, Clouse, and Mackay, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).   The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).   Furthermore, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).   "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Here, Plaintiff fails to allege any *facts* showing that Defendants Burgess, Clouse, and Mackay encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegation of supervisory responsibility is insufficient to demonstrate that Defendants Burgess, Clouse, and Mackay were personally involved in the alleged violation of Plaintiff's constitutional rights.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendants Burgess, Clouse, and Mackay.

### ii.   Defendants Erway, Montague, Majerczyk, Turner, and Johnson

Plaintiff first alleges that on August 29, 2022, he "reported the threats he faced" to Defendants Johnson, Montague, Turner, and Majerczyk. (ECF No. 1, PageID.3.) Plaintiff states that he requested protective custody at that time, "but was denied." (*Id.*) Plaintiff alleges no additional facts about this request.

21

Subsequently, in November or December, "Plaintiff was assaulted by Big Owl [(another prisoner)]" while Plaintiff was in his cell.  (*Id.*)

As an initial matter, Plaintiff does not allege that he reported anything to Defendant Erway in August of 2022, and therefore, Plaintiff has failed to allege any facts to suggest that Defendant Erway had any involvement in the matter in August of 2022.  Furthermore, Plaintiff's vague and conclusory assertion that he reported unspecified threats to Defendants Johnson, Montague, Turner, and Majerczyk on August 29, 2022, is insufficient to show that a substantial risk of harm was present when he was not placed in protective custody by Defendants after reporting these unspecified threats.  Reporting unspecified threats to these Defendants certainly has a suggestion of some vague risk; however, without additional supporting facts about what the threats involved and what Plaintiff told Defendants, Plaintiff has failed to allege sufficient facts to suggest that any risk he faced at that time was substantial. Moreover, although Plaintiff alleges that prisoner Big Owl later attacked him in November or December, this incident occurred approximately three months after Plaintiff requested placement in protective custody on August 29, 2022, and besides Plaintiff's vague assertion of an unspecified threat that he faced in August, Plaintiff does not allege that he reported any further concerns about his safety to Defendants. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity.  Under these circumstances, Plaintiff has failed to allege sufficient facts to show that Defendants Johnson, Montague, Turner, and Majerczyk disregarded a substantial risk of harm when they did not place Plaintiff in protective

custody on August 29, 2022.  *See Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242–43 (6th Cir.1994) (holding that the plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").  Therefore, for the reasons set forth above, Plaintiff's Eighth Amendment failure to protect claim against Defendants Erway, Johnson, Montague, Turner, and Majerczyk regarding the unspecified threat he faced on August 29, 2022, will be dismissed.

Next, Plaintiff alleges that even though prisoner Big Owl had attacked Plaintiff in November or December of 2022, Defendants Erway, Montague, Turner, and Majerczyk placed Plaintiff in the Start program unit, where prisoner Big Owl is also placed.  (ECF No. 1, PageID.3; ECF No. 7, PageID.22.)  Plaintiff states that prisoner Big Owl "is right across the hall from Plaintiff's cell."  (ECF No. 7, PageID.22.)  Although Plaintiff has by no means proven this claim, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment failure to protect claim against Defendants Erway, Montague, Turner, and Majerczyk regarding Plaintiff's placement near the prisoner who previously attacked Plaintiff.

### b.    Medical Care

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege

that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

In this action, Plaintiff alleges that following prisoner Big Owl's attack on Plaintiff while Plaintiff was in his cell, Plaintiff had "a knot on the head and injuries to the body." (ECF No. 1, PageID.3.) Plaintiff states that he "reported it to Unit 2 staff at the time, but his claims w[ere] disregarded." (*Id.*) As an initial matter, it is not clear from the factual allegations in Plaintiff's complaint that he has adequately alleged facts to satisfy the objective component of the relevant two-prong test. Specifically, without additional allegations regarding any other symptoms Plaintiff had, Plaintiff has failed to allege a sufficiently serious medical need with respect to the "knot on his head," and Plaintiff's conclusory allegation of "injuries to the body" is insufficient to show a serious medical need. *See, e.g., Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020) ("[I]t is difficult to infer a serious medical need from the facts Plaintiff has alleged. Similarly, Plaintiff does not suggest that his bruising or headache did not resolve on their own."); *Medina-*

*Rodriguez v. Frank*, No. 1:22-cv-471, 2022 WL 17038113, at *6 (W.D. Mich. Nov. 17, 2022) (citations omitted) (concluding that Plaintiff's allegations regarding "a bloody nose and bumps to his face and head" failed to satisfy the objective component).

Regardless, Plaintiff does not allege that any of the named Defendants had any involvement in Plaintiff's receipt, or lack thereof, of medical care. (ECF No. 1, PageID.3.) As discussed above, where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore*, 92 F. App'x at 190 (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier*, 41 F. App'x at 764. Furthermore, any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Because Plaintiff fails to allege that any of the named Defendants were involved in his receipt of medical care, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding Plaintiff's allegedly inadequate medical care.

### c.    Start Program

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner

might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

As with other Eighth Amendment claims, in order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

In this action, Plaintiff describes the Start program[4] as "a form of punishment," and he states that it is an "alternative segregation." (ECF No. 7, PageID.22.) Plaintiff does not allege additional facts regarding the conditions of his confinement in the Start program.

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*,

---

[4] The Court has previously recognized that Start Units are programs designed to provide an alternative to administrative segregation for those inmates who, *inter alia*, have been diagnosed with serious mental illnesses. *See Medina-Rodriguez*, 2022 WL 17038113, at *2 n.2. "Inmates are classified according to stage, with corresponding restrictions." *Id.*

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). To the extent that Plaintiff is denied certain privileges in the Start program, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Accordingly, Plaintiff fails to state an Eighth Amendment claim regarding the conditions of his confinement in the Start program.

### 5.    Fourteenth Amendment Claims

#### a.    Due Process Clause

##### i.    Placement in Start Program

Plaintiff contends that his placement in the Start program in January of 2023 violated his right to due process. (*See* ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

27

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that "[he] was forced into the Start Now program without due process or any further misconducts." (ECF No. 7, PageID.22.) Plaintiff states that the Start program is an "alternative segregation" and "is a form of punishment." (*Id.*) Plaintiff does not allege that his placement in the Start program will affect the duration of his sentence, and as explained below, Plaintiff has failed to allege facts to suggest that the Start program is an atypical and significant deprivation.

As noted above, Plaintiff describes the Start program as an "alternative segregation." (*Id.*) With respect to a prisoner's detention in segregation, in *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484.

28

Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Here, Plaintiff does not allege that he was placed in segregation for an extended period of time; instead, he alleges that he was placed in the Start program in January of 2023, and thus this placement has been for less than a year. Although Plaintiff alleges in a conclusory manner that his placement in the Start program "is a form of punishment," Plaintiff alleges no facts to suggest that his placement there is an atypical and significant deprivation.[5] *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No.

---

[5] For the same reasons set forth above, Plaintiff's receipt of 10 days in detention for his possession of a knife did not violate the Due Process Clause of the Fourteenth Amendment.

19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021).

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claims regarding his placement in the Start program.

### ii.    Grievances and Failure to Investigate

The Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim against Defendants for failing to properly investigate Plaintiff's grievances.

As an initial matter, the courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing,

*inter alia, Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64–65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendants regarding their responses to his grievances and the failure to investigate his grievances.

### b.    Equal Protection Clause

Plaintiff alleges that his right to equal protection under the Fourteenth Amendment was violated; however, he provides no further explanation or facts to support this claim.  (*See* ECF No. 1, PageID.2.)  The Court construes Plaintiff's complaint to raise a class-of-one equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

"[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class."  *Davis v. Prison Health*

31

*Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)).  A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory."  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  In this action, Plaintiff's equal protection claims are wholly conclusory.  Plaintiff fails to allege any facts to suggest that his fellow inmates were similar in all relevant aspects.  Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### B.    ADA Claims

Finally, without providing any further explanation, Plaintiff claims that Defendants violated his rights under the ADA. (ECF No. 1, PageID.2.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.  In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998).  The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their individual capacities only.  Because Plaintiff may not pursue ADA claims against Defendants in their individual capacities, for that reason alone, his ADA claims may be dismissed.

Moreover, even setting aside this capacity issue, turning to the merits of Plaintiff's ADA claims, as an initial matter, Plaintiff has failed to allege any facts to show that he has a disability pursuant to the ADA.  *See* 42 U.S.C. § 12102(2).  Even assuming Plaintiff had alleged sufficient facts to show that he has a disability pursuant to the ADA, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.  Indeed, Plaintiff alleges no facts to support his ADA claim.  Therefore, Plaintiff's conclusory allegations of an ADA violation without specific supporting

factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's ADA claims will be dismissed.

## Conclusion

For the reasons set forth above, Plaintiff's motion for preliminary injunction (ECF No. 2) will be denied without prejudice. Additionally, the Clerk will be directed to update the docket to reflect that the document currently filed as Plaintiff's "amended complaint" (ECF No. 7) is an amendment to the original complaint. Plaintiff's complaint will consist of Plaintiff's original complaint (ECF No. 1) and the amendment (ECF No. 7).

Further, having conducted the review required by the PLRA, the Court determines that Defendants Burgess, Clouse, Mackay, Johnson, and Baker will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Erway, Montague, Majerczyk, and Turner: First Amendment retaliation claims; Fourth Amendment claims; Eighth Amendment failure to protect claims based on unspecified threats in August of 2022; Eighth Amendment medical care claims; Eighth Amendment conditions of confinement claims; Fourteenth Amendment due process and equal protection claims; and ADA claims. Plaintiff's Eighth Amendment failure to protect claim against Defendants Erway, Montague, Majerczyk, and Turner regarding Plaintiff's

34

placement in the Start program in close proximity to the prisoner who previously attacked Plaintiff remains in the case.

An order consistent with this opinion will be entered.


Dated:  June 1, 2023                          /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge

35